## SION PAYSON *versus* ISAAC CASWELL & *al.*

In an action for malicious prosecution, or for a conspiracy to injure the plaintiff by a groundless criminal prosecution, the want of probable cause for prosecuting is essential to the maintenance of the suit, however malicious the defendant may have been.

In an action for a malicious prosecution, if there be a conviction of the criminal offence charged before a magistrate, having jurisdiction of the subject matter, not obtained by undue means of the prosecutor, it will be conclusive evidence of probable cause.

THIS was an action of the case, the declaration containing three counts, one for a conspiracy to injure the plaintiff, one for a malicious prosecution, and the third a special count setting forth all the facts, and claiming damage for the injury.

The general issue was pleaded and joined, at the trial at December Term of this Court, 1841. The plaintiff introduced copies of a prosecution instituted on the complaint of said Caswell against the plaintiff, made to Stephen Barrows, Esq. dated the 16th of February, 1839, for cutting twenty-five cords of wood on the 7th of the same month on certain land described therein, not having the consent of the owner thereof, and a judgment of the said justice against said Payson, finding him guilty of the offence charged against him; an appeal to the then Court of Common Pleas; and the judgment of said Court, showing a verdict of acquittal, and judgment thereon. The ruling of the Judge was based upon the facts in the case which follow.

The plaintiff then introduced the following witnesses who testified as follows, to wit.

James Keene, Jr. That he was at the office of Edwin Smith, Esq. in Warren, in February, 1839, as he believed; the defendants, Isaac Caswell and Ephraim Bowley, were there,

a conversation took place about a warrant against the plaintiff; but he did not know whether a warrant was obtained. Bowley said to Caswell, " we will have the warrant."

James Tolman testified, that he was present with the defendants after the plaintiff was discharged in the Court of Common Pleas, last season, in a store, Caswell said they did it to draw out Payson's strength. Bowley said, " we did not expect to do any thing, we have made out all we expected;" that the witness did not bear it in mind.

Samuel Hewett; that in conversation with Caswell, in going to Thomaston in Feb. 1840, Caswell said, he did not calculate to beat Payson, but he drew out his strength to use in his civil suit against Payson. The witness had asked him how he made it with Payson.

Lewis Hall; that he heard the defendants conversing together after the trial in the Common Pleas, in a store, about the case. Caswell said, " we did not expect to beat Payson, but to draw out his strength;" that Caswell or Bowley said, " we know now just what we have to prove." Bowley and Caswell were both present before the justice who tried the case against Payson, and testified.

William Bowley; that in the winter of 1840, Caswell said he cared nothing for Payson, if Hewett, (referring as the witness supposed to Ephraim G. Hewett) would not take up for him; said he had found out all Payson would do.

Rufus Keene; that he had conversation with Caswell in April, 1839, witness said, ." you have had a suit with Payson and lost it," he said, " that is of no consequence, I did not expect to make out much in that, I only did it to draw out their strength, I know how to take them, I know how to use them up, I am going to bring another suit." Ephraim Bowley was present, and entered into conversation with us.

Ephraim G. Hewett; that he was present at the trial in which Caswell complained of Payson, before the justice, and had conversation with Ephraim Bowley about that case before the trial. This was the November or December before; that Ephraim Bowley called at witness' brother's store and said to

witness, "I understand you have bought, or talk of buying a piece of land of Sion Payson," and he wished to know how it was; that he told him that the plaintiff wished to sell some; Bowley said, as near as he could learn there was no rightful owner to it, said he inquired of Thayer and others, and their opinion was that the one who should chop on it would hold it, said he was not afraid of any one's interfering, excepting Bayley Moore or Sion Payson; was not much afraid of Moore, for he had deeded it or would deed it to Isaac Caswell; that Caswell had used Moore up once, and he would not wish to trouble him; that he was not afraid of Payson unless he got some one to buy the land for him; he was poor and no great sprawl; he said if witness would not buy the land or assist Payson in any way, he would give twenty dollars, or more if that was not enough. Witness told him he had no interest in it, and did not know that he should have, and would not take it.

*On cross-examination;* that Bowley told him at the same conversation, that he had a deed, or should have one of the land, and witness told Bowley that Payson owed him eighty dollars; that he is not on good terms with Caswell. Payson and witness had before talked about the purchase of the land.

William Bowley called again, — that he had conversation with Caswell about the criminal prosecution and said something about the trial; said Payson was bound over, but he told the justice to fine him as light as he possibly could; he said considerable of the trial, and he got a fine of two dollars on him. After the justice trial, and before the following March, Caswell said he had taken a part of the wood cut by Payson, and he intended to have the whole of it. The morning after Payson was discharged in Court, in Bickford's cellar, Payson said to Caswell, "I shall prosecute you," Caswell said, "you dare not, I did not expect to beat you, but now I know how to take you." Ephraim Bowley was then present. Payson told Caswell he should sue for the wood, he had hauled away.

Stephen Barrows; that he was the magistrate who tried the case, *State* v. *Payson,* on Caswell's complaint; Caswell

brought to him the complaint and warrant; Caswell was a witness at the trial, and George Bowley and Ezekiel Bowley, but could not tell what was the testimony of Isaac Caswell; that Isaac Caswell did not state that he knew Payson had a claim to the land; said he himself had a deed of the land; Ezekiel Bowley was called to testify to the execution of a deed; the plaintiff requested to have the trial put off from the 16th Feb. to 8th of March, and it was done; it was proved that plaintiff cut the wood; witness did not recollect that Payson introduced evidence; Bayley Moore was then examined and his testimony was favorable to Payson. Afterwards witness thought Ephraim Payson was called by Sion Payson. The witness being afterwards called, testified, that Ephraim Bowley was at the trial and testified, and on being inquired of in relation to the plaintiff's claim, said he had no knowledge till recently, that plaintiff had any claim (a deed was presented to witness by the defendant's counsel and he said it was offered at the trial before him;) that plaintiff admitted that he cut the wood described in the complaint, and admitted that the deed shown to the witness from E. Bowley to Isaac Caswell covers the same land embraced in the complaint.

William Bowley, called again; that in 1827 or 1828, Ephraim Bowley came to him and asked him if it would not be a good plan to fence the land which is now in dispute; said Sion Payson was going to hold it; said he had sold that piece of land to Caswell; that he had sold him a piece of his original lot and a piece of the 60 acre lot; that he thought Ephraim Bowley said the plaintiff was going to hold the disputed land under Bayley Moore, but was not positive; same fall, at another time, witness said to Ephraim Bowley, " you had better give me the land, rather than to go to law about it." He said, " you have as good a right as Payson or I," Bowley made a fence all round the land; that he has known the gore between No. 1 and the Camden line about thirty years; lives from it about half a mile, or a little more, to go straight; has lived there about twenty years; set sable traps and crossed hedge fences more than thirty years ago; does not

know who built the fences; Bayley Moore was in possession of lot No. 1; that the witness is nearly fifty years old; that he never worked on the gore; that he worked on the Camden gore; that he knew the line because it was on the way to Grassy Pond.

Ephraim Payson; that he knew the land described in the complaint about *twenty-five or twenty-six* years ago; Bayley Moore was in possession of lot No. 1 at that time, and Moore told him he was in possession of the gore, at the time he was between the gore and lot No. 1; that in 1817, he bargained with Moore for 60 acres off No. 1, and it came to the gore and no further, and they run the line on a fence which was upon the line of the gore, that he had often seen the fence, and it was called a possession fence. At that time Moore occupied the other part of No. 1, exclusive of the sixty acres, till 1827 or 8; but never possessed the part of the gore that he gave a deed of to Ephraim Bowley; that he told him at the time the deed was given that he had no title to the gore, but Bowley said, it would prevent witness from going on to it, and said he would pay for the deed; that soon after the date of the deed to Ephraim Bowley, there was a dispute between Bayley Moore and the witness, Moore claiming pay for the gore; it was referred to Brickett, Littlehale and Lindsey; Ephraim Bowley testified at that reference, that the witness told him at the time he gave the deed, he had no title to the gore.

*On cross-examination;* that he found fence between the gore and the 60 acres and went no farther; that Moore gave him a bond of the 60 acres; that he occupied it several years; that he gave notes to Moore for the 60 acres for $480; that when he bargained for the 60 acres, Moore urged him to take the gore for $20, saying he presumed no one would call for it; said he would give a quit claim deed of the gore for $20; this the same day the 60 acres were run out; that he told Moore he would give the $20, to be paid after he had paid for the 60 acres; but when the bond was given, nothing was said about the gore and the deed of that was never given; that the only matter before Brickett, Littlehale and Lindsey as referees,

was the $20, which Moore demanded for the gore; that he had no recollection of having seen the fence between the gore and the 60 acres, after the latter was run out, and he had nothing to do with the gore; that it was in his opinion ten years after the bond was given, before he talked with E. Bowley about the gore lot; that he contracted with him to sell a year before the deed was executed; that E. Bowley said if witness would not think hard of him to go and cut, he would give witness a deed of one and a half acres of land, which would fetch the 60 acres to the road; that witness told him he would not think hard; that he received a deed of the one and a half acres and built a house thereon, and gave nothing excepting a deed of the gore; that he did not pay Moore for the 60 acres and never had a deed; he paid all but $56 of the 480, and Moore conveyed the 60 acres to D. F. Harding without witness' consent; that he never cut or disposed of any thing on the gore, other than by the deed to E. Bowley; that he supposed Moore to be dead; that he never paid him for the gore; that Moore *said* when they run out the 60 acres, that he had fenced the gore, but witness did not know it to be so; that he sold said one and half acres to E. Bowley; that plaintiff was living on the south west part of the gore at the time he gave the deed to E. Bowley, but not the part in dispute; that Moore never lived in Hope; went to Searsmont more than twenty years ago; that the deed from him to E. Bowley embraced the disputed part and no more.

Joseph H. Beckett; that he was a referee between Bayley Moore and Ephraim Payson twenty years ago; Payson said he told E. Bowley he had no title to the land conveyed by him, and that he did not remember that Bowley, who was present, made any objection.

W. Boys; that he knew the gore in 1817, and bought a part of it then; that his purchase was wholly south west of what is opposite lot No. 1; was often before on that which is opposite lot No. 1; before 1817 Bayley Moore cleared a piece on No. 1, and there was a fence round the part so cleared. In a year or two there was a fence round a part of this gore,

small trees lopped down and the butts resting on the stumps, but witness does not know who built it. Moore boarded at his father's and worked on the gore; it was two hundred rods from clearing on No. 1, to the gore and it was one and a half miles from gore to witness' father's house, and that witness worked on No. 1, for Moore.

*On cross-examination ;* that he did not recollect either of the corners between the 60 acres and the gore; that he does not know that he passed over brush fence. E. Bowley owned land near grassy pond and owned and occupied the lower end of gore.

Jeremiah Lassell ; that he had known the gore over fifteen years; that the plaintiff lived on a piece of it not in dispute ; there was a hedge fence ; saw B. Moore in the disputed piece in 1817 or 18, Moore said he had sold it to Sion Payson, and had put him in possession ; plaintiff and the witness repaired an old fence on the Camden line in 1825 ; bought timber of the plaintiff, at one time after fence was repaired, two or three years.

*On cross- examination ;* did not cross over brush fence on Camden line; knows Folger's corner. The place where saw plaintiff and Moore together was southerly of the part in dispute ; John Payson and Sion were then dividing the line.

John Floger ; that he knew No. 1, and the gore ; that he purchased of the plaintiff a part of No. 1, and part of the gore. In 1836, saw plaintiff on the part of the gore now in dispute ; spoke of the lot as his own ; this was before witness had a deed ; while we were there, he offered to sell it to me.

*On cross-examination,* Payson said he was willing to sell his farm ; that the witness knew nothing of the lines; that he worked near the upper camp ; that they were sawing stave stuff ; one tree was blown down near the line and one they cut ; that he gave for farm $1000 ; plaintiff asked $1200 ; plaintiff said he would sell as much as there was no dispute about, and he bounded it out in the deed ; that the plaintiff offered to sell lumber, but witness could not tell which side of the

line it was; that the deed from E. Payson to E. Bowley includes the land in dispute.

William Wilson; that E. Bowley told him he had a case here and wanted him to come as a witness; that he told him, that he should have to testify about the trees, he said the witness might keep that back, but witness said he forgot all about that statement; that he worked for E. Bowley 16 or 17 years ago; knew the lot, called the gore lot, thinks he has cut timber on it; was a boy 15 or 16 years old; cut at different times 5 or 6 years; that he only knows they called it the gore lot; knew E. Payson's 60 acres; knew the town line of Camden; that he, E. Bowley and others went through and spotted the line, as they said, on the gore; that Bowley owned one side and Leach the other, and on Bowley's side they lumbered; that plaintiff came and sold spruce logs to Bowley; that they were there on the gore; plaintiff asked Bowley what he would give a thousand for such trees as would make plank; plaintiff hauled the logs and witness the plank; plaintiff pointed out the highland; the spotted line was crosswise of the gore.

Joseph Barns; that he was on the land in the winter of 1840; knew it in 1827 and 8; plaintiff then lived on the west end of the gore; that witness lived at Geo. Bowley's and was in his employ and helped cut two trees; Jones was there; the trees were cut on land in dispute; E. Bowley said they were cut on Sion Payson's and they must pay for them; said they had to buy them of Sion Payson.

*On cross-examination;* that this conversation was in Geo. Bowley's store, and he was there; that witness never knew any of the lines; that the timber was cut between the two camps. Neither George nor Ephraim Bowley were on the land and he did not inform Ephraim where they were cut and he did not know that Epnraim had knowledge where they grew; that witness said, " you get this timber easy," and they said, they must pay Sion Payson for it; that the trees were hauled to Geo. Bowley's barn, short of half a mile to where the trees were cut.

Stephen Hatch; that he knew the east line of the disputed

land, and was there in 1833 ; that in 1832, he made an agree-
ment with E. Bowley for standing wood on the south and
east of the disputed land ; had chopped considerable and no
lines had been shown ; that he told E. Bowley, that plaintiff
was watching to see that he did not get over the line ; that he
called on Bowley to show the lines ; that Bowley run on a line
and the witness spotted new trees, there was a large pine and
a large spruce tree which witness wanted ; that he told Bowley
he was sorry they were not on the lot he was cutting on ;
Bowley said, " Oh you must not take them, for they are on
Sion Payson's," that he said to Bowley, that as the oak was
reserved, he ought to have the pine and spruce, and he an-
swered, " you can find no fault for they are on Sion Payson's ;"
that plaintiff came there the same winter and witness told him
the line shown by Bowley, and the plaintiff said it was right ;
that the pine and spruce were on him, and he offered to sell
them to the witness.   In 1834, the witness having cut only a
part of the wood, purchased of E. Bowley, he sold it back.

*On cross-examination ;* that the lot of wood was on the
pond, but witness did not know how far it extended.

John Folger, called again ; that Isaac Caswell was sworn on
the trial of his complaint, as was E. Bowley ; Bowley testified
that he did not know that plaintiff had any title, or said it just
after ; that Caswell said he did not know a syllable of any
claim that plaintiff pretended to have, till about the time he
was going to cut ; thinks the land described in the deed from
Payson to Bowley is the same described in the complaint ; that
on the trial of the criminal case in the Court of Common Pleas,
Sion Payson had eight witnesses ; several witnesses came to
Belfast on Thursday, started from home on Wednesday, and
went home the following Saturday.   The jury were out on the
case fifteen minutes or a little longer.

The plaintiff offered to prove by parol, that at the trial of
the criminal prosecution in the Court of Common Pleas, *State*
v. *Payson,* the cause was submitted to the jury on the single
question of title to the land in Caswell, but the Court ruled
the evidence to be immaterial, and it was not adduced.

The foregoing evidence being adduced by the plaintiff, and he having rested his cause thereon, the defendant's counsel moved a nonsuit, whereupon the plaintiff's counsel contended, " that he was entitled to recover, because he had established the facts, that the judgment rendered against him at the justice court, had been procured principally, or in part at least by the false and malicious testimony of the defendants, especially in said Bowley's denying that he ever knew that said Payson had or pretended to have any title or interest to the premises described in the complaint, until about the time the plaintiff moved away from Hope, and in said Caswell's swearing that he never heard or knew that said Payson had or pretended to have any claim whatever to the premises described in the complaint, till a few days before the cutting by the plaintiff, and by their suppression under oath of other material facts, and hence that the record of said judgment, so rendered, was not evidence for the defendants of probable cause. That from all the evidence, it appeared that Bayley Moore took possession of lot No. 1, and of the entire gore opposite to said lot, some thirty years ago ; that he subsequently sold his possessory title to said Sion Payson and put him into the open possession of the same, and that the plaintiff had ever since kept up that possession to the entire gore, in such a manner as to be good in law against Ephraim Bowley, and all claiming under him, or at least, that Caswell had not such title, as would enable them (Bowley and Caswell) to maintain that criminal prosecution in behalf of the State against said Payson ; and that the defendants, well knowing the same, instituted that prosecution for the purpose of learning what evidence, it would be necessary for them to procure to defeat Payson's and establish their own claim to the land in a civil suit, without any expectation or belief that they should be able to procure his conviction ; that they bore false testimony at the trial in the Court of Common Pleas, in suppressing material facts and in misstating and denying others, and that all the evidence taken together showed an entire absence of probable cause."

" 'That the cutting of the twenty-five cords of wood, stated in the complaint, being admitted at the trial of the prosecution against Payson, the verdict was evidence, ·that Caswell had not such title in himself, as would be the foundation of such prosecution against Sion Payson ; and that if the jury should be satisfied of a conspiracy of these defendants to get him prosecuted as a criminal in order to harass him and to ascertain and procure evidence for a civil suit, then the defendants would be liable on those counts in the writ, charging them with a conspiracy, whether Payson had in fact acquired by possession a good title or not."

But TENNEY J., then presiding, ruled, that upon the foregoing facts, it did not appear there was a want of probable cause for the prosecution in the complaint and warrant of the *State* v. *Payson*, and intimated doubts, whether there was sufficient evidence to induce the jury to return a verdict for the plaintiff, on the ground of a conspiracy in the defendants to injure the plaintiff. Whereupon it was agreed by the parties, that the defendants might put into the case the deeds adverted to by the witnesses, and that a nonsuit should be entered subject to the opinion of the whole Court. The defendants then produced in evidence a deed from Ephraim Payson to Ephraim Bowley, dated April 22, 1828.; also a deed from Ephraim Bowley to Isaac Caswell, dated Dec. 24, 1835, both which had been recorded. A nonsuit was entered according to the agreement, which is to stand, if in the opinion of the Court, on the foregoing evidence, the plaintiff is not entitled to recover. But if the evidence is sufficient to authorize a jury to return a verdict for the plaintiff, the nonsuit is to be taken off and the action is to proceed to trial.

*H. C. Lowell* argued for the plaintiff, and among other grounds, contended :—

That by an abuse of legal criminal process the defendants had injured the plaintiff in his person, by the vexation caused by it ; in his reputation, by his arrest and trial as a criminal ; and in his property, by the amount of expenses necessary for his de-

fence.  For this he has a remedy in some appropriate form.
Const. of Maine, Dec. of Rights, § 19.

To support the count for malicious prosecution, two things
are necessary ; that the criminal prosecution was without prob-
able cause, and that it was with malice.   Here the evidence
was examined, and it was insisted both were made out.    In
examining this question, and in support of various propositions
considered to be pertinent, the following cases were cited.
The facts should have been submitted to the jury, with appro-
priate instructions.    The facts must be found before the Court
can decide as to probable cause as matter of law.    *Stone* v.
*Crocker,* 24 Pick. 81 ; *Jackson* v. *Rogers,* 1 Johns. Cases, 81 ;
Tillinghast's Adams on Ejectment, 44 and notes.   The defend-
ants had no such title as would enable them to maintain the
criminal prosecution, and this was known to them.    14 Wend.
192 ; 12 Pick. 324 ; 4 Kent, (4 Ed.) 445 to 449 and notes ;
Hilliard's Abr. 27 ; 6 Mass. R. 418 ; 5 Pick. 348.    The de-
fendants acquired no title by the deeds, because their grantor
had none, and so informed them, and because none could have
passed by reason of a disseizin by the plaintiff.   St. 1821, c. 62,
§ 6 ; St. 1825, c. 307, § 2 ; 2 Greenl. 275 ; 4 Kent, (4 Ed.)
446 ; 6 Pick. 172 ; 6 Mass. R. 229 ; 14 Mass. R. 200 ; 15
Mass. R. 495 ; 10 Peters, 414 ; 11 Peters, 41 ; 4 Segt. & R.
465 ; Adams' Ejectment, 430.

The conviction of the justice was not conclusive evidence
of probable cause, and indeed no evidence of it.   The case of
*Whitney* v. *Peckham,* 15 Mass. R. 243, has been examined
and overruled, and cannot now be considered as law.   4 Wend.
598 ; 2 Fairf. 475 and 367.   With the other proof, the con-
viction of the justice furnished evidence of want of probable
cause, rather than of its existence.

On the face of the proceedings the justice had no jurisdic-
tion of the matter, and his judgment is void.   Const. of Maine,
Dec. of Rights, § 6 ; St. Maine, c. 76 ; *Merriam* v. *Mitchell,*
13 Maine. R. 439 ; 8 Greenl. 365 ; 1 Greenl. 230.

The plaintiff should have been permitted to show, that at
the trial of the criminal process in the Common Pleas, the case

was submitted to the jury on the single question of title to the land in Caswell, to rebut any presumption of probable cause. 19 Eng. Com. Law R. 487 ; 24 Pick. 81.

The evidence was sufficient to support the action on the count for a conspiracy.   2 Mass. R. 337 ; 9 Mass. R. 415 ; 16 Eng. C. L, R. 19 ; Lieber's Pol. Ethics, 346, 367 ; 7 Cowen, 445 ; 2 Day, 249 ; Ham. N. P. 278.

The action is sustained on the special count.   1 Binney, 172 ; 8 Wend. 674 ; 4 Wend. 259 ; 17 Mass. R. 186 ; Greenl. Ev. 122, 123 ; 3 Mass. R. 196 ; 1 Tyler, 60 ; 1 U. S. Com. Law Dig. 546.

*F. Allen* and *W. H. Codman,* for the defendants, said that the offence with which the plaintiff was charged before the justice, was not a crime, but a mere trespass to land.   It was one mode allowed by statute of preventing a repetition of an injury to the property of the complainant.   Without proof of special damage, of which there was none, the action cannot be maintained.   And malice must be expressly found.   2 Esp. N. P. 121 ; 1 Campb. 199.

The complainant had a seizin of the land where the cutting was by his recorded deed.   The plaintiff had no title whatever, and could acquire none by possession to unfenced woodland, as this was.   There was then neither title, nor possession in the plaintiff, and of course, there was no *disseizin to* prevent the effect of the plaintiff's deed.   The plaintiff admitted the cutting, and offered no evidence of permission from the owner. Not only probable cause was made out for the prosecution, but full evidence to sustain it.   Where there was probable cause, the action cannot be maintained even by proof of actual malice.   *Ulmer* v. *Leland,* 1 Greenl. 135 ; 2 Stark. Ev. 907 to 919 ; Yelv. 105.

The plaintiff defeated his action by the introduction by him of the record of his conviction before the justice.   The testimony of the defendants was wholly immaterial, and besides has not been shown to be untrue.   *Whitney* v. *Peckham,* 15 Mass. R. 243 ; *Witham* v. *Gowen,* 14 Maine R. 362.

The nonsuit was properly directed for three reasons, at least ;

Payson *v.* Caswell.

one that the plaintiff had not introduced evidence to maintain his suit; another, that he had introduced conclusive evidence to defeat it; and the third, that it was done with his consent. Either of the two former is sufficient to show, that the nonsuit was rightly ordered on the merits; and the latter, that he cannot now complain, that the case was not submitted to a jury, even if otherwise it should have been.

The opinion of the Court was drawn up by

WHITMAN C. J. — The plaintiff's declaration consists of several counts. The substance of each of them is, that the defendants conspired together maliciously and without probable cause, to prosecute him criminally, under the statute, for a trespass upon land averred not to belong to him. His counsel contends that he has a right to recover upon one or more of three grounds; first, that the prosecution instituted was malicious, and without pobable cause; secondly, that the defendants were guilty of a conspiracy, by joining together in a prosecution against him, well known to them to be groundless; and, under this head, he contends, that it was not necessary to allege or prove the want of probable cause. The third ground relied upon, and which is supposed to be well sustained under the last count, is, that the plaintiff has been grievously injured, by a groundless and malicious prosecution, instituted by the procurement of the defendants, and ought to find redress therefor.

These distinctions were enforced by the counsel in an argument of great prolixity, and with the citation of authorities, indicating great labor and research; but we think without maintaining them. The want of probable cause is essential under either aspect of the case. The last count is, in substance, the same as the others. However malicious the defendants may have been, if they had probable cause for the prosecution, the policy of the law would shield them from harm, in a suit of this kind, whatever form it might have assumed.

In Buller's Nisi Prius, 14, it is laid down, that to support an

action for a conspiracy to prosecute an innocent person, the plaintiff must show both malice in the defendant, and the want of probable cause for his prosecution. In the 2d Vol. of Espinasse's Nisi Prius, pp. 528 and 533, the same doctrine is reiterated. What shall be deemed probable cause, when the facts are not in controversy, is a question of law.

In the present case the plaintiff, in his declaration, sets forth a conviction of himself before a justice of the peace, who had jurisdiction of the subject matter, in the prosecution complained of. Such convictions have been adjudged to be conclusive evidence of probable cause. *Reynolds* v. *Kennedy*, 1 Wils. 232; *Whitney* v. *Peckham*, 15 Mass. R. 243; *Ulmer* v. *Leland*, 1 Greenl. 135. The language of the Courts in these cases was used with reference to the cases then respectively before them, as is often the case, without adverting to the exceptions and modifications, to which a different state of facts might give rise. In *Burt* v. *Place*, 4 Wend. 398, the entire universality of the rule was very properly questioned; and it was held that, where the conviction, in the inferior Court, was procured by the circumvention and fraud of the defendant, it should not avail him; and in *Witham* v. *Gowen*, 14 Maine R. 362, the Court recognized it as sound law, that, if the conviction before the justice was obtained by the false swearing of the defendant, it would not be conclusive evidence in his favor of the existence of probable cause. In these two cases we have instances of exceptions to the general rule, indicative of the general nature of the characteristics which might be expected to attend them; but the rule itself remains unimpaired. If there be a conviction before a magistrate, having jurisdiction of the subject matter, not obtained by undue means, it will be conclusive evidence of probable cause.

In the case before us it appears, that the plaintiff attended before the magistrate, and made defence; and, on his motion, was allowed time to prepare himself to make further defence; which he did with counsel learned in the law. There is no evidence in the case, which can be considered as showing, that the complainants, the defendants here, who were admitted to

testify before the magistrate, prevaricated in giving their testimony; or that the trial was not conducted with fairness. This case then, does not seem to be brought within any reasonable exception to the general rule. Lord Kenyon, in *Smith* v. *McDonald*, 3 Esp. Cas. 7, held, that, if the jury paused upon the evidence before they acquitted the plaintiff upon his trial, it would be evidence of probable cause for the prosecution. In the case at bar, the evidence is, that the jury, on the final trial, were out some fifteen or more minutes before they agreed on a verdict of acquittal. The evidence therefore of probable cause for the prosecution of the plaintiff, seems to have been sufficient; and the nonsuit must remain.