# CHARLESTOWN.

## HALE *v.* BOYLEN.

Submitted September 15, 1883—Decided September 29, 1883.

1. In an action for malicious prosecution the weak presumption, that exists in every case, that every public prosecution is founded on probable cause, is strengthened by the proof, that the plaintiff had after an examination by a justice been committed to jail to answer an indictment when found, but it may be rebutted by other testimony showing that there was no probable cause for the prosecution.   (p. 240.)

2. A case in which the *prima facie* presumption of probable cause always arising in an action for malicious prosecution was strengthened by the commitment of the plaintiff by a justice to answer an indictment, but in which the court held, that the facts proven by the plaintiff rebutted this strengthened presumption of probable cause, and that upon all the evidence the plaintiff had shown, that the prosecution was based on no probable cause.   (p. 246.)

GREEN, JUDGE, furnishes the following statement of the case:

On November 27, 1882, B. T. Hale instituted an action of trespass on the case against F. A. Boylen in the circuit court of Ritchie county.   At January rules, 1883, the declaration was filed, in which the plaintiff alleges, that the defendant on November 18, 1882, went before C. L. Zinn, a justice of said county, and falsely and maliciously and without any probable cause charged the plaintiff with having unlawfully and feloniously cut down and carried away fifty-three trees growing on the land of the defendant in said county, and falsely and maliciously without any probable cause procured said justice to issue a warrant to apprehend the plaintiff and bring him before said justice to answer said charge, and under this warrant caused the plaintiff to be arrested and taken before said justice, who on the hearing decided, that the plaintiff should be committed to the custody of the jailer of the county for a misdemeanor, and under the *mittimus* of said justice the defendant caused the plaintiff to be confined in the jail of Ritchie county for two days, from which he was released and discharged under a writ of *habeas corpus* issued by the judge of the circuit court of said county, who decided on the hearing of said *habeas corpus*, that the plaintiff was illegally detained in custody.   The damages of the plaintiff in this declaration were laid at one thousand dollars. The defendant pleaded not guilty, and issue was joined thereon.   On March 3, 1883, this issue was tried by a jury, and after the plaintiff had offered his evidence, the defendant moved the court to exclude the evidence offered by the plaintiff, and the court sustained this motion and excluded from the jury all the plaintiff's evidence, and therefore the jury found the defendant not guilty, and the court rendered thereon a judgment that the defendant recover of the plaintiff his costs.

The plaintiff during the trial of the case excepted to the ruling of the court excluding all his evidence from the jury, and the bill of exceptions sets out all the plaintiff's evidence so excluded.   This evidence consisted, first, of the testimony given by the plaintiff himself, who proved the facts stated in the declaration, which we have hereinbefore stated; second, of the testimony of C. L. Zinn, the justice, that he issued the warrant to arrest the plaintiff upon the following affidavit of

the defendant : "F. A. Boylen, under oath, says that on or about the 15th day of October, 1882, Hale Brothers did unlawfully enter my land on Spruce creek, in Ritchie county, West Virginia, and take therefrom timber which does not belong to them, and have since been repeatedly entering and taking timber from my land. I have notified them to stop, but they are still hauling on; and therefore pray that the above named parties be apprehended and dealt with according to law." The warrant was such as is described in the declaration, except that it issued against B. F. Hale and Joseph Hale partners doing business as Hale Brothers, and it recites that the complaint was, that they did unlawfully and feloniously cut down said trees standing on said Boylen's land; that he, the justice, tried the cause on November 22, 1882, and decided that there was probable cause to hold the plaintiff to answer an indictment at the circuit court; and he therefore issued a *mittimus* to the jailer of said county to receive the plaintiff into his custody and hold him to the next term of the circuit court, or until he was discharged by law. In this *mittimus* the charge is recited to have been a charge of a misdemeanor. The plaintiff being recalled testified, that he went on the land of the defendant to cut timber under the following paper, which he obtained from M. S. Jeffreys, to-wit:

"M. S. Jeffreys bought of F. A. Boylen this the 7th day of June, 1881, seventy poplar trees located on Straight Fork of Spruce creek, Ritchie county, timber situated on the tract of land owned by F. A. Boylen.

"Received payment on the above ($70) seventy dollars, in cash.

"Witness my hand.

"——————————    [SEAL.]

"M. S. Jeffreys is to take all the poplar timber on a certain tract of land that will measure eighteen in wood, twenty-four feet long, and John Britton and John Boylen are witnesses to this contract.

"F. A. BOYLEN."

On the foregoing writing there is an endorsement in the words and figures following, to-wit:

ENDORSEMENT—"I assign the within to J. C. Hale.

"M. S. JEFFREYS."

He also testified, "that the facts testified by Boylen on the trial before the justice were that he (Boylen) had sold seventy trees of timber and more, if they were found on the tract of land, to M. S. Jeffreys, and that Jeffreys had paid him seventy dollars; that there were conditions in the sale to Jeffreys; that Jeffreys was to come and count and mark and pay for the same within two weeks; that Boylen was present at two different times while plaintiff was cutting timber; the first time plaintiff ever met him to know him, plaintiff told Boylen he had bought the timber and expected to cut and haul it. Boylen denied the paper which plaintiff showed him, and said it was a forgery; that he had signed his name to the paper, but there was writing in pencil above it which was not there when he signed it; and Boylen warned the plaintiff that he was trespassing on his land; that in the evening Mr. Wilson, plaintiff and Boylen met, and Wilson talked about compromising, and we agreed to meet and count and mark the trees and pay all over seventy trees; that they met and marked about twenty trees, and came to a tree lying down, and Boylen wanted to count that; that plaintiff did not want it and refused to take it; that Boylen said he had sold all poplar timber down and up; that they then set a day when plaintiff agreed to have Jeffreys present; that Jeffreys, Boylen and plaintiff met and they failed to agree about counting the down timber, and no compromise was made, and the plaintiff went on after that cutting and hauling timber as before, and had cut something less than forty-five trees under that bill of sale."

On cross-examination, the plaintiff testified, "that what he had detailed above to the jury about Boylen and Jeffreys was what he had testified to substantially before the justice on the trial."

On being recalled, the plaintiff testified, "that he did not know that there was any substantial difference between his and the defendant's testimony before the justice as to what had taken place between them in regard to the timber transaction. Jeffreys and Boylen, in their testimony before the justice, differed about the conditions and terms of the contract of sale of the timber."

And it was further shown by the plaintiff, that after the

discharge of the plaintiff on the writ of *habeas corpus*, no further proceedings were had against plaintiff, and that the prosecution was ended and the plaintiff discharged.   Plaintiff testified that Boylen admitted before the justice that he signed the paper, but denied that he had written the matter above his signature in pencil, except the names of John Britton and John Boylen; that Boylen had testified before the justice that he had written under a blank bill of sale a receipt for seventy dollars paid him on timber by Jeffreys; that the paper aforesaid was used as evidence on the trial of the warrant before the justice, and that Boylen had testified before the justice about other matters between him and other parties connected with the timber transaction." And the plaintiff gave in evidence an order, made by the judge of this Court in vacation on a writ of *habeas corpus*, discharging from arrest the plaintiff in this case.

M. S. Jeffries testified, "that the paper aforesaid was, as it now appears, signed by Boylen in his presence, in the road in front of John Britton's house, on the Straight Fork of Spruce creek, and was in evidence before the justice, and that Boylen on the trial before the justice testified that he did not do the pencil writing above his signature except that he had written the names of John Britton, John Boylen and his own; that Boylen testified before the justice that the witness Jeffreys was to take all the down timber, logs, &c., and the witness Jeffreys testified before the justice that he had agreed to take only one tree that was down." And here the plaintiff rested.

The plaintiff obtained from this Court a writ of error and *supersedeas* as to the judgment of the circuit court of Ritchie.

*R. S. Blair* for plaintiff in error.

*John A. Hutchinson* for defendant in error.

GREEN, JUDGE:

The motion to exclude from the jury all the plaintiff's evidence, which was made in this case by defendant and sustained by the circuit court, ought not to have been sustained, unless upon a demurrer to the plaintiff's evidence the court

ought to have sustained the demurrer, this motion to exclude the evidence being simply a substitute in our practice for a demurrer to the evidence.   *James & Mitchell* v. *Adams*, 8 W. Va. 568, syllabus 5.   The rules as to the weight to be given to the evidence in such cases are well settled in our State and have often been announced by this Court.   The most recent announcement of them is to be found in *Allen* v. *Bartlett*, 20 W. Va. 46, syllabus 1.   This rule, when applied to a motion by a defendant to exclude from the jury all the plaintiff's evidence, would be, that such motion should not be sustained and all the plaintiff's evidence excluded from the jury, unless the plaintiff's evidence was insufficient to sustain his case after allowing full credit to all of his evidence and not only admitting all facts directly proved by it but also admitting all facts and conclusions, that a jury might fairly infer from the facts proven.

In this case it was necessary for the plaintiff in order to sustain his case to prove: 1st, that the prosecution alleged in the declaration had been set on foot and conducted to its termination in the final discharge of the plaintiff in the manner alleged in the declaration; 2d, that it was instigated and procured by the defendant; 3d, that it was without probable cause; and 4th, that it was malicious.   See *Vinal* v. *Core & Compton*, 18 W. Va. syl. 2 p. 1 and pp. 23, 24 and 25, and *Scott & Boyd* v. *Shelor*, 28 Gratt. 899.   According to the principles laid down in the first of these cases it is clear, that the evidence of the plaintiff in this case, when we allow, as we must as the case is presented to us, full credit to all of it and treating as true every fact directly testified to by any of the plaintiff's witnesses, as also every fact and conclusion that the jury might fairly have inferred from the facts proven, fully establishes the first, second and fourth of the above requisites.   This is not disputed by the counsel for the defendant in error in this Court.   But in his argument he insists that the third of these requisites is not established by the evidence, that is, that the plaintiff's evidence fails to establish, that his prosecution and arrest at the instance of the defendant was *without probable cause.*

Was the committing of the defendant to jail to be there detained to answer an indictment by the justice after the

examination of the charge against him *conclusive* evidence,
that there was *probable cause* for his prosecution? If the
plaintiff has been found guilty by a jury, he cannot of course
sustain an action for malicious prosecution, because it is
obvious, that the verdict of a jury *conclusively* establishes,
that the defendant had *probable cause* for instituting the pros-
ecution; and the defendant will not be heard to say or offer
proof, that the prosecution was without probable cause.
On the other hand if the jury has acquitted the plaintiff, and
he has been discharged, he may institute this action, but he
cannot sustain it, if the defendant proves, that he had pro-
bable cause for instigating the prosecution; for the verdict
of the jury of not guilty is of course not *conclusive* evidence
of a want of probable cause; for the jury may well have
found the plaintiff *not guilty*, though they were satisfied from
the evidence, that there was a strong probability of his guilt;
for they could not find othewise, unless his guilt was proved
*beyond all reasonable doubt.* It is obvious therefore, that the
acquittal of the plaintiff by a jury is entitled to very little if
any weight on the question, whether there was probable
cause.

In an action for malicious prosecution the burden of prov-
ing a want of probable cause is in the first instance on the
plaintiff, for the law presumes, that every public prosecution
is founded on probable cause. But as a want of probable
cause is a negative proposition necessarily difficult of direct
proof, slight evidence is regarded as sufficient to prove such
want of probable cause. See *Vinal* v. *Core & Compton*, 18
W. Va. 41; *Williams* v. *Taylor*, 6 Bing. (19 E. C. L. 49);
*Taylor* v. *Williams*, 2 B & Ad. 845 (22 E. C. L. 199); *Cotton*
v. *James*, 1 B. & Ad. 128 (20 E. C. L. 360). But slight as
the evidence is, that is necessary to prove in the first place
a want of probable cause, yet there are many cases, which
hold that the acquittal of the plaintiff by a jury will not even
amount to *prima facie* evidence of such want of probable cause,
though some have said such acquittal would amount to *prima
facie* evidence of a want of probable cause, and thus throw
the burden of showing, that there was probable cause, on
the defendant. It is obvious therefore from the decisions,
that if the acquittal of the plaintiff is any evidence at all on

the question of whether there was or was not probable cause, it is entitled to very little weight. See *Vinal* v. *Compton*, 18 W. Va. 42. The final conviction of the plaintiff is however obviously conclusive of probable cause and therefore precludes necessarily an action for malicious prosecution.

. Suppose however the conviction is by some inferior tribunal or by a justice or other magistrate under some statute, and judgment of conviction is appealed from and is reversed by an Appellate Court, what effect in an action for malicious prosecution should be given to this judgment of conviction subsequently reversed? There has been upon this question much controversy and dispute. In a number of cases decided by highly respectable courts it has been held, that in an action for malicious prosecution for an offence a conviction of the plaintiff of the offence before a court or justice having jurisdiction is conclusive evidence of probable cause, although upon appeal from the court or justice the plaintiff was acquitted. See *Whitney* v. *Peckham*, 15 Mass. 243; *Parker* v. *Farley*, 10 Cush. 279; *Herman* v. *Brookerhoff*, 8 Watts 240; *Kaye* v. *Kean*, 18 B. Mon. 839; *Palmer* v. *Avery*, 41 Barb. 290; *Griffis* v. *Sellars*, 4 Dev. & B. (N. C.) L. 176; *Parker* v. *Huntington*, 7 Gray 36; *Barton* v. *Kavanaugh*, 10 La. Ann. But in other cases it is held, that such a conviction, though afterwards reversed, is conclusive of probable cause, unless the plaintiff knew the testimony before the justice was false, or unless undue means of some character were used by the prosecutor to procure conviction before the justice. See *Womack* v. *Circle*, 32 Gratt. 324; *Payson* v. *Caswell*, 22 Me. 212; *Witham* v. *Gowen*, 14 Me. 362; *Reynolds* v. *Kennedy*, 1 Wils. 237; *Cloon* v. *Gerry*, 13 Gray 201. On the contrary there are many respectable authorities, who hold that in an action for malicious prosecution for a criminal offence a conviction of the plaintiff of the offence before a court or justice having jurisdiction is only *prima facie* evidence of probable cause, when upon an appeal from the court or justice the conviction is reversed or the accused discharged. See *Goodrich* v. *Warner*, 21 Conn. 432; *Mellor* v. *Baddeley*, 6 Car. & P. 374 (25 E. C. L. 494); *Jones* v. *Kirksey*, 10 Ala. 939; *Moffatt* v. *Fisher*, 47 Ia. 473; *Burt* v. *Place*, 4 Wend. 591; *Whitworth* v. *Hall*, 2 C. & M. 675 (22 E. C. L.

173); *Israel* v. *Brooks*, 23 Ill. 575; *Thorpe* v. *Balkett*, 25 Ill. 339; and the dissenting opinions of Judges Staples and Burke in *Womack* v. *Circle*, 29 Gratt. 196-205, 32 Gratt. 343. The court of appeals of Virginia seemed on this question to be divided, Judges Anderson, Moncure and Christian being of opinion, that the .conviction of the plaintiff by a justice, though reversed on appeal, was conclusive evidence of probable cause for the prosecution, while Judges Staples and Burke held it to be only *prima facie* evidence.

I do not deem it necessary to express any decided opinion on this mooted point; for if it were admitted that the judgment of a justice convicting the plaintiff of a crime, though reversed on appeal, was conclusive evidence that there was *probable cause* for the prosecution, it would by no means follow that the judgment of a justice, not that the plaintiff was guilty of a crime, but simply that there was probable cause for a prosecution and the committing to jail to answer an indictment, if one should be found, would necessarily be entitled to the same weight and consideration and be also held conclusive that there was probable cause for the prosecution. In the one case the justice must have convicted, because on the evidence he believed the plaintiff guilty *beyond all reasonable doubt* of the crime, with which he was charged; and surely such judgment is entitled to much more weight in determining the question, whether there was probable cause for the prosecution, than a simple judgment requiring the plaintiff to answer an indictment, should one be found. It is to be presumed, that the justice would not have found the defendant guilty and pronounced sentence on him, unless after a full and careful examination of the case the evidence adduced was very strong to show, that he was guilty of the offence charged ; and it may perhaps be that such judgment of conviction, even if reversed, ought to protect the prosecutor from any action for malicious prosecution, though I am not prepared at this time to say it would, if the want of probable cause for the prosecution was distinctly shown. But if the action of the justice has been simply to commit the plaintiff to answer an indictment, if one should be found, we have no such confident assurance, that there has been a careful examination of the case by the justice, nor have we any such assur-

ance, that the evidence was very strong to show that he was guilty of the offence charged. Such examinations are frequently carried on in a careless manner, and especially is this true when the party can give and is allowed to give bail as in the case before us; the justice may and is likely in such case to commit for trial on perhaps too slight evidence, believing that in so doing much less injury is inflicted on the plaintiff, if not guilty; than would be, were he to pronounce him guilty and pass sentence upon him.

It seems to me therefore, that whatever conclusion may be reached, when the plaintiff has been pronounced guilty on a trial of a case on its merits by the justice, on the question, whether or not the prosecutor ought to be exempt in every case from an action for malicious prosecution, merely because the plaintiff has been found guilty and sentenced by a justice, when this judgment on appeal has been reversed, yet when the plaintiff has been only committed by a justice to answer an indictment, should one be found, and is afterwards acquitted or discharged, such commitment ought to be regarded as strengthening the weak legal presumption, which without evidence always exists, that every public prosecution is based on probable causes, and it ought to exempt the defendant in an action for malicious prosecution from all liability, unless the plaintiff satisfies the jury by evidence of the existence of enough facts known to the defendant, when he instigated the prosecution, to suffice to show that the defendant had no probable cause for the prosecution; and if the plaintiff thus rebuts this *prima facie*, strengthened though it be by the judgment of the justice, he is entitled to recover in his action. The defendant cannot justly shield himself from responsibility by merely producing the *mittimus* of a justice. He must meet the positive proof of the plaintiff, that the defendant acted without probable cause, by counter proof, or he ought to be liable in this action, if he acted with legal malice. This may be regarded as the settled law in Virginia. It was so expressly decided as far back as 1815 in *Maddox* v. *Jackson*, 4 Munf. 465; and, so far as I know, no judges in Virginia or in this State have ever disapproved of this case.

The counsel for the plaintiff in error appears from his argu-

ment to think, that this case is inconsistent with that of *Womack* v. *Circle*, 32 Gratt. 324, in which a bare majority of the court concurred; but as I have said, I do not consider these cases as inconsistent, and it is obvious, that the majority of the court, who concurred in this last decision, regarded it as entirely consistent with the decision in 4 Munford. For Judge Anderson, who pronounced the opinion concurred in by the majority of the court, while he does not mention the case in 4 Munford, does expressly approve of the principles laid down in it. He says: "But proof that the magistrate bound the party over to appear at court being an *ex parte* examination to inquire whether the plaintiff should be put on his trial is not *conclusive* evidence of probable cause." See 32 Gratt. 338. And Judge Staples, who pronounced the opinion of the majority of the court in that case expressly approves of this decision in 4 Munford. See 32 Gratt. 352. So, as I understand, this case in 4 Munford was either expressly or impliedly approved by all the judges in *Womack* v. *Circle*, 32 Gratt. 324. It was also, as I understand, followed by the court of appeals of Virginia in *Scott and Boyd* v. *Shelor*, 28 Gratt. 891. In that case the plaintiff was arrested and taken before a United States commissioner upon a charge made by the defendant of passing counterfeit money. Upon hearing the witnesses, the commissioner sent the plaintiff on for trial before the district court of the United States at Abingdon; and upon the final trial the plaintiff was acquitted by a jury. He thereupon brought his action for a malicious prosecution against the defendant and recovered a verdict and judgment for damages; which was unanimously affirmed by the court of appeals of Virginia. Now the functions of a commissioner in committing for trial are precisely like those of a justice of the peace. He must decide, that there is at least probable cause, before he can send on for further trial. In this respect therefore this case was precisely like *Maddox* v. *Jackson*, 4 Munf. 462, and it was clearly decided, that, though a party prosecuted for a crime is examined by the justice or commissioner, and he decides that there is probable cause to believe accused guilty and sends him on for trial as in this case, and he is subsequently acquitted by a jury and discharged, he may dispite his having been thus com-

mitted by the justice or commissioner sustain an action for malicious prosecution, if he can establish by evidence, that the prosecution was without probable cause; and of course his mere commitment could not have been regarded by the court as *conclusive* evidence of probable cause. This decision rendered in 1815 and reported in 4 Munford has never been called in question in this State; and we are bound by its authority, and I have no disposition to call it in question, as it seems to me to have been based on good reason. Especially am I disposed to acquiesce in it, as it is well supported by decisions elsewhere, which lay down the law in like manner. See *Johnson* v. *Martin*, 3 Munf. (N. C.) 248; *Bostick* v. *Rutherford*, 4 Hawks (N. C.) 83; *Ewing* v. *Sandford*, 19 Ala. 605 ; *Haupt* v. *Pohlmann*, 1 Rob. (N. Y.) 121; 16 Abb. (N. Y.) Pr. 301; *Kendrick* v. *Cypert*, 10 Humph. (Tenn.) 291.

I desire here to call attention to a misuse of language sometimes fallen into by judges. They sometimes speak of the judgment of the justice committing the accused for trial as *prima facie* evidence of probable cause subject to be rebutted by other testimony. This for instance is the language used by Judge Staples in *Womack* v. *Circle*, 32 Gratt. 352. He should have said that such judgment of a justice was sufficient evidence of probable cause and strengthened the weak presumption, which always exists in the absence of all evidence, that every public prosecution is founded on probable cause (See *Vinal* v. *Core & Compton*, 18 W. Va. 41); but that this *prima facie* presumption strengthened as it is by such a judgment of a justice can nevertheless be rebutted by other testimony.

I conclude therefore, that the commitment of the plaintiff by Justice Zinn to the jailer of Ritcie county on a charge of crime on the oath of the defendant and the order to hold him until the next term of the circuit court, or until he was discharged in course of law, did not *conclusively* show, that his prosecution was based on probable cause, but it did tend to show that, and it strengthened the presumption, that his original arrest was based on probable cause; and it was incumbent on the plaintiff to show, that he was arrested and imprisoned on a charge made by the defendant, which was not based on probable cause. Did the evidence of the plain-

tiff show, that he had been arrested and imprisoned on a charge not based on probable cause; and it did overthrow the legal presumption, that the prosecution was based on probable cause strengthened, as it was, by his having been committed by Justice Zinn to answer an indictment? It seems to me clear that it did; for the plaintiff's evidence showed, that the timber he cut upon the land of the defendant, was cut under contract, which the defendant had made with a party, who had transferred to the plaintiff his contract. The occasion for issuing this warrant for the arrest of the plaintiff and for charging and prosecuting the plaintiff with a crime was nothing but a controversy as to the extent and character of the plaintiff's right to cut timber on the defendant's land. That he had such right does not seem to have been even disputed. Certain it is, that the plaintiff under this contract claimed *bona fide* the right to cut this timber. If by his interpretation of this contract he claimed a greater right to cut timber than he really had, and undertook against the protest of the defendant to exercise this right, he clearly did not thereby become a criminal, and did not subject himself to a criminal prosecution, and therefore this prosecution was without probable cause. Regarding the evidence as we must, as the case is now presented to us, if the defendant had demurred to the plaintiff's evidence, we must also hold as obvious, that the jury could from this evidence have fairly inferred, that the plaintiff acted with legal malice.

I am of opinion therefore, that when construed, as we must construe it, this evidence fully establishes the plaintiff's right to sustain this action. He has sufficiently by his evidence established each of the four requisites we have laid down as incumbent on him.

The circuit court therefore erred in excluding from the jury the plaintiff's evidence on the motion of the defendant; and for that reason the judgment of the circuit court rendered on March 3, 1883, must be set aside, reversed and annulled; and the verdict of the jury must be set aside and a new trial directed; and the plaintiff in error must recover of the defendant in error his costs in this Court expended; and this case must be remanded to the circuit court of Ritchie with directions to be further proceeded with according

to the principles laid down in this opinion, and further according to law.

THE OTHER JUDGES CONCURRED.

JUDGMENT REVERSED.    CAUSE REMANDED.