Anderson, J.
This is an action for malicious prosecution. It is the second time it has been brought here, and it is contended for the defendant in error, that the questions now raised are res adjudicata, and cannot be again heard. But the court is unanimously of a different opinion, and consequently that they are open to adjudication on this appeal. "We will proceed, therefore, to the consideration of the case as presented by the record.
Sallie Ailstoek, a colored woman, who lived on James river in the county of Botetourt, opposite the farm of Wm. W. Womack, the defendant below, sent him word by a colored man, Billy Burks, on the 1st of July, 1876, that Hannah Scott, also a colored woman, had been bribed by Margaret Circle and Charles Circle, to burn his wheat which was stacked on his said farm. Billy returns from Womack’s without seeing him, he being from home. The next morning he started again to go to Womack’s house, and met him on Lick Bun bridge, and delivered to him *328 ®a^*e Ailstock’s message. Womack, naturally startled by such a message, and the solictude shown to give him information, went the same day to the house of Sallie Ailstock, and told her what Billy Burks had said, and asked her if it was so. She told him it was so; that Hannah Scott had told her that Miss Margaret Circle wanted to get her to burn the wheat stacked on defendant’s farm, and she wanted to get her to go with her and help her to burn it; that the burning was to have taken place on the Wednesday night immediately previous. She further said that she and Hannah Scott had gone to see Margaret Circle on the previous Monday; that they were in the kitchen at Circle’s, and Hannah asked her to go to the garden with her; that when she got there she told her, she did not want to show her the garden; that she wanted to tell her that Miss Margaret Circle wanted her to go and burn the wheat on Womack’s place; that'she and witness could burn it, and then wade the river, as she had tried it and found it was not deep enough to drown her; that there was no conversation between Margaret Circle and her (Sallie) on that occasion, but she heard Margaret Circle ask Hannah if there was no danger in talking before her. That Margaret Circle and Hannah Scott then went into an adjoining room, and remained there talking for half an hour. Afterwards she and Hannah left and walked home together, and on the way Hannah told her that if she would go with her and help her to burn the wheat, she would get her husband to get her a calico dress. She said she had been at Circle’s once before with Hannah Scott, and that whilst there, Margaret Circle told Hannah that her brother Charles wanted to see her, and Hannah went to another room to see Charles Circle; and when she and Hannah came away, going home together, Hannah told her that Charles Circle wanted her to burn defendant’s tobacco and houses. The foregoing was the testimony of Sallie Ailstock in this suit, as certified by the *329 coúrfc below. And she further testified that she had made the same statement to the defendant Womack, when he called to see her on the 16th of July, 1876, and to the same before Captain Douthat, the justice who tried the case; and that she had also stated in her testimony befor him, that Hannah Scott had offered to give her part of the pay she was to get from Margaret Circle, and that she told Hannah that she would not go with her to burn the wheat.
After this alarming communication was confirmed by Sallie Ailstock, with such details and incidents as were calculated to make an impression of its truth, Womack returned home, and doubtless immediately informed V. C. By a Is, his father-in-law, and G. W. Byals, his brother-in-law, one or both of whom were probably interested in the wheat, of the alarming communication which had been made to him by Sallie Ailstock, and the pains she had taken to give him the information. And, upon consultation, they concluded to lay the matter before a justice of the peace, and ask for protection to their property.
The justice, Henry C. Douthat, after hearing their statement of what had been communicated to Womack by Sallie Ailstock, and doubtless an expression of their fears for the safety of their property, which was grounded alone upon said communication of Sallie Ailstock, as the justice was informed—for they did not profess to know anything personally, and neither of them was examined as a witness— determined of his own motion (for no particular mode or kind of protection was designated by them) evidently to proceed under chapter 196 of the Code of 1873. It is by no means clear that an action of malicious prosecution would lie for a prosecution originating in that way. Lord Eldon held in Leigh v. Webb, 3 Esp. R. p. 165, that, if a party makes a complaint before a justice of peace, which the justice conceives to amount to a felony, and issues his warrant accordingly to arrest the party complained against, *330 ant^ ^acts not amount to felony, no action for a malicious prosecution will lie against the party who made the
But to proceed with the narrative. The justice, pur- ■ suant to section 2 of said chapter, caused Sallie Ailslock and Hannah Scott to come before him, and heard the statement of the former on oath, hereinbefore given, and examined the latter, one of the accused, whether on oath or not he did not remember, and reduced the complaint to writing as directed by said section, which he copied from the Code or Mayor’s Guide in duplicate, no part of which in its preparation was dictated either by Kyals or Womack, one of which he required the defendant, and the other G. W. Kyals, to sign; and upon the complaints and the testimony of the witness, he issued warrants for the arrest of all three.
The complaint is that the complainant is afraid and has good cause to fear that the said Margaret Circle, Charles Circle and Hannah Scott will do him some grievous bodily injury, or will burn his wheat now on his farm, and therefore prays they may be required to give security to keep the peace toward him; and the said Wm. W. Womack also says on oath that he does not make complaint against the said Margaret Circle and Hannah Scott, nor require such security from any hatred, malice or ill will, but merely for the preservation of his property from injury. The same averment is made in the complaint signed by G. W. Kyals. But it appears that neither complaint was sworn to until after the trial was over, and the judgment of the justice was pronounced.
The written complaint states the grounds of the complainant’s fears—to wit: that Margaret Circle and Charles Circle did attempt to bribe Hannah Scott to burn the wheat, &e. Such allegation is made evidently upon the information received from Sallie Ailstock, and not upon any personal knowledge of the complainant; which was *331 well known to the justice. It was upon that information ° A # alone, and not upon any personal knowledge of its truth, that he felt that he had good cause to fear his wheat be burnt, and he sought this preventive justice. It was not a prosecution instituted against Margaret and Charles Circle for the substantive offence, the misdemeanor, soliciting a person to commit a felony, which was not committed; but it was a proceeding to prevent the commission of the crime, which the defendant in this suit had been informed and believed Hannah Scott had been solicited to do by the plaintiff.
If it had been a prosecution for the misdemeanor, the justice should have proceeded under chap. 199 of the Code of 1873. In such a prosecution the justice is invested with power by section 15 to discharge the accused, but has no power to convict. He has only authority to commit for trial, and the recognizance shall be for appearance before the county court for trial. His jurisdiction is only to make inquiry whether the accused should be tried for the offence charged.
But the defendant in this suit instituted no such prosecution against the plaintiff. He only applied to the magistrate for such proceedings as would afford protection to his property, which he feared was in danger, from the communication which he had received from Sallie Ailstock, which he feared and believed was true. The justice instituted this proceeding, tried the case, and decided that he had good cause for his complaint, &c., and gave judgment recognizing or binding the plaintiff in the penalty of §500 to keep the peace toward him for twelve months. The plaintiff gave the bond, or recognizance, and appealed to the county court. And upon the case being called in that court, she obtained an order reversing the judgment of the justice, quashing the recognizance, and dismissing the complaint, and then instituted this action for malicious prosecution, in which she obtained a verdict for §500 *332 damages, which the defendant moved the court to set .. , . aside, but his motion was overruled and judgment rendered him; to which judgment he obtained a writ of error from one of the judges of this court.
Two errors are assigned in the petition :
1st. The refusal of the court to give the instructions asked for by the defendant, and the giving of others in their stead.
2d. The refusal of the court to grant a new trial on the ground that the verdict was against law.
Let us consider the last first. The appellate tribunal cannot decide whether the verdict was contrary to the evidence or not, because all the evidence is not certified. But it is well settled that to maintain this action, both malice and want of probable cause must be shown, and the onus is on the plaintiff to prove both.
Malice may be implied from want of probable cause; but not necessarily. In the celebrated case of Johnstone v. Sutton, 1 Durn. & East. p. 544, Lord Mansfield and Lord Loughborough said, “ From the want of probable cause malice maybe, and most commonly is, implied. But that must be shown by the plaintiff.”
In Herman v. Brookenhoff, 8 Watts R, 240, Chief Justice Gibson said, “In a criminal prosecution want of probable cause must be combined with malice.” Again he says, “ want of probable cause is evidence of malice, though inconclusive in the origination of a prosecution.” Cases may be readily conceived, where the prosecution was instituted upon grounds of suspicion which would not amount to probable cause, where there was an entire absence of ill will or malice, on the part of the prosecutor. In such cases the action would not lie, because there must be combined malice and want of probable cause shown. And although malice may be implied from the want of probable cause, if the circumstances will warrant the implication, yet the existence of malice may be repelled by the circumstances *333 though there was not good ground for the prosecution; and in such case the action will not lie. This doctrine is •clearly stated and supported by authorities in L. C. on the Law of Torts, p. 178 to 181.
In this case we have all the evidence that was before the justice; and it seems to me, it shows, that his anxiety for the safety of his property, which he feared was in danger, sufficiently accounts for the procedure of the defendant below, and his friends, in their application to the justice of the peace for protection, without imputing malice. The communication which incited his fears, was made by a colored woman. It was made voluntarily, and with no ostensible motive of doing any one an injury, but only from a wish to save her neighbor from a great loss, which she, from the pains she took, of her own motion, to give him timely warning, it would be naturally inferred, believed to be impending. It is not a question of the guilt or innocence of the plaintiff. It is whether the complainant’s proceedings were malicious and without probable cause.
“ Probable cause for instituting a prosecution is such a state of facts in the mind of the prosecutor, as would lead a man of ordinary caution and prudence to believe, or to entertain an honest and strong suspicion, that the person accused is guilty.” Chief J. Shaw in Bacon v. Towne& al., 4 Cush. It. 217. It seems to me that such a communication made to any reasonable man, in the manner and under the circumstances that it was made to the defendant below, would arouse his fears, and impress him with the necessity •of seeking legal protection of some sort, unless he knew the party making the communication to be mischievous and utterly unworthy of belief—of which there was no such proof before the justice. But it is manifest that the defendant below did credit it, and apprehended that his property was really in danger, and in applying to the magistrate was prompted by a desire to protect it; which repels the idea of malice in the absence of other testimony *334 ^ejQ<4ing to show it. But if the evidence does not show both malice and want of probable cause, the action will not lie. record contains, in my opinion, no evidence of malice, which it devolved on the plaintiff in the action to show. But inasmuch as all the evidence on the trial of this case is not certified, the judgment cannot be reversed on that ground.
I am of opinion, also, that there was not a full and fair trial of the prosecution upon the appeal to the county court, but that the prosecution was in fact abandoned by the commonwealth’s attorney, who refused to examine any witness on behalf of the commonwealth, although her witnesses were all present in court. In Bacon v. Towns & al. 4 Cush. R. 217, Chief J. Shaw said: “It must appear, before this action will lie, that the defendant in the indictment has been fully acquitted.” He also held that a discharge from an indictment by a nolle prosequi is-not sufficient to maintain the action. The mere abandonment of the prosecution, and the acquittal of the prisoner, are no evidence of a want of probable cause. Williams v. Taylor, 16 Bing. 183; Johnson v. Chambers, 10 Ired. 287; Vanderbilt v. Mathis, 5 Duer, 304. It shows only that the prosecution has failed. It may still have been taken on reasonable grounds of suspicion. Youngs v. Polly, 1 B. Mun. 358.
The attorney for the commonwealth testifies that he abandoned the prosecution, and that he had been retained by Margaret Circle as her counsel to prosecute this suit; which, I think, disqualified him to represent the commonwealth in that prosecution. Ho imputation against him is intended. Ho one who knows him would question the rectitude or purity of his motives. Yet, in accepting a retainer as counsel for the defendant in that prosecution to prosecute this action on her behalf, to the maintenance of which the reversal of the justice’s judgment against her by the county court, in the case then pending, was indispeu *335 sable, disqualified him to represent the commonwealth in that case; and however faithfully and conscientiously he may have discharged his duty to the commonwealth that case—as, doubtless, hé felt he could do, because upon examining the papers and hearing the statement of Hannah Scott, one of the accused, he honestly believed that the prosecution ought not to be sustained—yet it seems to me that to give force and validity to a judgment of acquittal obtained under such circumstances, to lay the foundation of an action for malicious prosecution, or to allow it as evidence of want of probable cause, to any extent, would be to establish a precedent which would be unsafe and deleterious. The attorney for the commonwealth was not the arbiter of the guilt or innocence of the accused, and his opinion, however honestly formed, was not evidence of her guilt or innocence. And a judgment so obtained, not upon evidence, but upon an abandonment the prosecution by the commonwealth’s attorney,, could not establish the innocence of the plaintiff in this suit, and lay the foundation for this action. Much less would it show want of probable cause for the prosecution; and most probably having influenced the verdict of the jury, the judgment should be reversed on that ground.
We will now consider the rulings of the court upon the instructions tendered by the defendant’s counsel. The first instruction does not assert the doctrine that the judgment of the justice was sufficient or conclusive proof of probable cause. It is not founded merely upon the hypothesis of the judgment of conviction by the justice, but upon the facts upon which the judgment was founded—i. e., first, that Sallie Ailstock gave information to complainant that Margaret Circle had attempted to bribe Hannah Scott to burn his wheat stacks; second, that complainant believed said communication to be true, and went before the justice, and made complaint upon such belief, that the Circles had attempted to bribe Hannah Scott to burn his *336 wheat, as he had been informed by the said Sallie Ail- , , stock; and third, that the justice caused the said plaintiff the witnesses to be brought before him, and examined jnto the truth of the complaint, and, upon such examination decided that said plaintiff, Margaret Circle, was guilty as charged, and required her to enter into a bond or recognizance for her good behavior. And the doctrine asserted by the instruction is, that if this be so—that is all that is hypothetically stated—it constitutes sufficient proof of probable cause for the proceedings of the defendant; and the jury cannot find a verdict for the plaintiff on account of said complaint, or on account of the arrest and imprisonment of the plaintiff, even though they should find that the complaint was subsequently dismissed by the county court, &c., unless the jury should be satisfied by the evidence that the defendant knew the testimony before the justice to be false.
The second instruction does not vary materially from the first, except that it makes the decision of the justice conclusive of probable cause, even though the jury should find that she was innocent of the offence, and though she was afterwards acquitted on appeal to the county court, and the judgment of the justice was reversed; and reiterates the qualification of the first instruction, that “the jury must find for the defendant, unless they shall be further satisfied from the evidence that said Womack procured said decision of the justice by testimony known to him to be false at the time.”
The first instruction assumes the sufficiency of the evidence of probable cause, not only by reason of the judgment of conviction by the justice, but also upon the ground that the complaint was honestly made, upon information which the complainant believed to be true, and which, if true, as he believed, was conclusive of probable cause, inasmuch as it proved the plaintiff’s guilt. If the complainant honestly believed it to be true, although it was *337 afterwards shown not to be true, he could only act upon his honest belief, and the judgment of a disinterested magistrate within the limits of his jurisdiction, fairly obtained upon hearing the testimony, being against the plaintiff and sustaining the complaint, though afterwards reversed upon an appeal therefrom to the county court, was sufficient to show that the complainant had probable cause for his complaint and proceeding against the plaintiff, unless the judgment of the justice was obtained by his false swearing or the false swearing of others, which he knew to be false. To this last qualification the instruction is limited, as it only was applicable to the case, the complainant not having been a witness in the case at all. It seems to me that this instruction ought to have been given by the court, I cannot conceive how the conclusiveness of such evidence of probable cause could be impaired, except by proof that the judgment of the justice was fraudulently procured by bribery or false swearing of the complainant, neither of which is pretended—and both of which are guarded against by the postulate of the instruction, which assumes that the judgment was fairly obtained—or that the complainant obtained it by imposing false witnesses on the justice, whose testimony he knew to be false.
The second instruction enunciates the doctrine substantially that the judgment of conviction of the justice, fairly rendered without fraud or undue influence, the justice having jurisdiction of the case, and his decision within his jurisdiction being final, is conclusive of probable cause, although his judgment has been reversed upon an appeal to the county court. I am not aware that this question has ever been decided in Virginia.
An eminent writer on the law of torts says, it has been held that if the plaintiff (in an action for malicious prosecution), was convicted of the offence charged, before a court or magistrate, having jurisdiction of the subject matter, and without undue means of the prosecutor, as, for *338 ^ns^anceJ chiefly or wholly by his false testimony, this will be conclusive evidence of probable cause, although the plain-was afterwards acquitted by a jury. (1 Hilliard on Torts, p. 479). And cites-the following cases in support of it: Reynolds v. Kennedy, 1 Wils. R. 232; Cloon v. Gerry, 13 Gray’s R. 201; Payson v. Caswell, 9 Shepl. R. 212; Witham v. Goown, 2 Shepl. 362; Griffis v. Sellars, 4 Dev. & Batt. R. 176; Herman v. Brookerhoff, 8 Watts R. 240; Whitney v. Peckham, 15 Mass. R. 243, and Kaye v. Kean, 18 B. Mon. R. 839.
This conclusive effect is given to the judgment of a justice, if final and decisive of the case within his jurisdiction, though subsequently reversed by an appellate court. Chief Justice Gibson in Herman v. Brookerhoff, 8 Watts R. 240, said, “ The existence of probable cause is conclusively established by a conviction.” Citing Fisher v. Bristow, Doug. R. 215; Fitzherbert’s Natura Brevium, 114. And he remarks, “ a competent tribunal has sanctioned the accusation, and there can be no more trouble about it.”
But proof that the magistrate bound the party over to appear at court, being an ex parte examination to inquire whether the plaintiff should be put on his trial, is not conclusive evidence of probable cause. Although no action lies, when a plaintiff prevailed in a justice’s court, after a trial on the merits, though the judgment was re- • versed by the county court, still the effect of such judgment may be met by proof of fraud, conspiracy, perjury, or subornation. In the absence of such evidence the court should order a nonsuit. 1 Hilliard on Torts 480, citing Palmer v. Avery, 41 Barb. R. 290. In opposition to the foregoing decisions, the author cites only the case, Goodrich v. Warner, 21 Conn. R. 432. There are some other decisions in the same way. But as far as my investigations have gone, I think the decided weight of authority is in support of the conclusiveness of the judgment of the *339 justice to show probable cause, unless met by proof of fraud, conspiracy, the false swearing of the prosecutor, subornation, or the false swearing of other witnesses, the knowledge of the prosecutor that their testimony is false, whilst he imposes them on the justice as reliable.
There is no evidence in the record tending to show unfairness on the part of the justice, or fraud on part of the' plaintiff in error. If many of the justices of the peace in this commonwealth have been selected from the lowest grades of society, without regard to race or qualification, moral or intellectual, it is a most lamentable fact, and a gross reflection upon the character of their electors, and augurs badly for the future of our commonwealth. But, if so, the evil cannot be cured by the judiciary: The remedj is political. Nor is it competent for the courts to change the law as to the conclusiveness of a justice’s judgment of conviction in a criminal prosecution, fairly rendered, upon the question of probable cause, in an action for malicious prosecution, because of the appointment to the office of justice of the peace persons of inferior qualifications.
But in this case there is nothing in the record, in all the evidence which has been certified, to indicate or to raise a suspicion that Capt. Douthat, the justice who decided this case, was a man of low grade of character, or that he was not a gentleman of the strictest integrity, and a man of intelligent and honest and honorable bearing, and of suitable qualifications for his office; which, in the absence of all evidence to the contrary, the law will presume. Nor is there any evidence as to the character and standing of the plaintiff or defendant in this suit. It does not appear from the record that she was a lady of high character, or that the defendant to the action was a man of bad character. There is not the slightest evidence in the record to show that William W. Womack, in making the complaint, was influenced by ill will, malice or any other motive than *340 a ^es*re to Proi;ect his property, which he believed to be in danger upon the information he received from Sallie Ail-to the truth of which she testified, on oath, before £[je justice, or that he knew the testimony to be false, or did not honestly believe it to be true, or, in fact, that it was not true. The judgment of the county court does not show it, because that court did not hear her testimony. ■INor is there a scintilla of evidence of fraud, conspiracy, false swearing by the prosecutor, who was not examined as a witness at all, or of perjury by any witness for the ■commonwealth, or that the prosecutor knew or believed ■-that any witness for the commonwealth had sworn falsely, •or that the justice had not honestly and faithfully rendered his judgment. If it should be said that all the evidence not certified, it is true. But the defendant in error can-mot assume as facts what are not proved by the evidence ■which is certified. If she does, it is surely competent for the plaintiff in .error to reply that there is no evidence of •such facts in the record', although all the evidence is not •certified. It is not more competent for the former than for the latter to assume that to be a fact in the cause which the evidence certified does not prove.
But the instructions tendered by the defendant below were upon the hypothesis that the facts were proved as assumed, which would be a question for the jury, and repels the inference that, if unfairness, fraud, &c., on part -of the prosecutor, or of the justice, in the procurement of the judgment were shown, that the jury would be required by the instructions still to regard the justice’s judgment as conclusive of probable cause. It moreover appears that the justice resided in the immediate neighborhood of the parties and the witness, and may be presumed to know their character and standing; and it was upon his official responsibility that he directed what proceedings should be taken, prepared the complaint, arrested the parlies, heard the testimony, and decided the case.
*341 It seems to be well settled law, that a final judgment of conviction, from which there is no appeal, is conclusive evidence of probable cause, and will bar an action malicious prosecution. It is not only conclusive evidence of probable cause, but of the guilt of the party prosecuted. If an appeal should lie to a higher court, and the judgment should be reversed, and the accused acquitted, the first judgment would be no longer evidence of his guilt; but it by no means follows, that it would not be conclusive evidence that at the time it was rendered the defendant had probable cause for the prosecution. It would be unreasonable, it seems to me, to hold that the prosecutor had instituted the prosecution without probable cause, and is liable to an action for malicious prosecution, when the officer of justice, whom the law presumes to be disinterested and faithful, in the exercise of his lawful judicial jurisdiction, has tried the case, weighed the evidence, and is satisfied that there was not only probable cause for the prosecution, but that the accused is guilty, and so decides, although it is afterwards held upon an appeal to the county court that the accused is not guilty.
In Gorton v. DeAngelis, 6 Wend. R. 418, it was held that in an action for malicious prosecution it was necessary for the plaintiff to give some evidence of want of probable cause, and that “it was insufficient to provea mere acquittal. That alone is not prima facie evidence of want of probable cause.” Cited in Bigelow’s L. C. on the law of torts approvingly, p. 178. The same eminent writer, to whom reference has been made, says, “ while the action for malicious prosecution cannot be maintained without proof that the prosecution, or action, has terminated in favor of the present plaintiff, it is somewhat questionable, upon the authorities, whether the record of such termination is of itself even prima facie evidence of the want of probable cause. The weight of authority seems to be that it is not.” 1 Hilliard on the Law of *342 Torts. p. 480, citing Johnston v. Martin, 3 Murph. It. 248; Bostick v. Rutherford, 4 Hawks R. 83; Vanderbilt v. Mathis, 5 Duer. R. 304. If this be so, how can the reversal of a judgment of conviction on appeal, and the accjuittal of the accused affect the conclusiveness of the judgment of conviction on the question of probable cause? If the final judgment of acquittal is not even prima facie evidence of want of probable cause, it cannot rebut the conclusive presumption of probable cause arising from the former judgment of conviction.
The contrary opinion results probably, from not considering that the presumption of probable cause from the judgment of conviction, which is raised before that judgment is reversed, which is conclusive of the guilt of the accused until it is reversed, is not founded upon an assumption that the judgment is infallibly correct, but upon the fact that a disinterested judge or justice, upon a fair trial, has pronounced a judgment of guilty, upon the same facts on which the prosecution was instituted. And that if the officer of justice, in the disinterested and conscientious discharge of his judicial function (which the law presumes), regarded the facts proved as establishing the guilt of the accused, although he may be held by an appellate court to have erred in his judgment, it comports both with reason and public policy to hold, that the prosecutor, who acted in good faith, without fraud, conspiracy, false swearing or subornation, had probable cause for instituting the prosecution, and should not be liable to an action for malicious prosecution. The hypothesis that he so acted in good faith, if not express, is clearly implied in both instructions tendered by the defendant. I am of opinion, that both are substantially correct, and that the court erred in rejecting them, and for the same reasons that" the first instruction given by the court is erroneous. Upon the whole, I am of opinion, to reverse the judgment of the circuit court with costs, and to remand the cause for a new trial to be *343 had therein in conformity with the principles herein declared.
Staples, J.
The statute bearing upon the case prescribes that upon complaint made to a justice that a person intends to commit an offence against the person or property of another, the justice shall issue his warrant, and when the accused is brought before him and the witnesses heard, if he is of opinion there is good cause for ike complaint, he may require of the accused a recognizance to keep the peace and be of good behavior. The accused may, however, of right, appeal to the county court, which, upon the hearing, may affirm or reverse and dismiss the complaint.
Now, the justice, by his judgment, affirms there is good cause for the complaint. The county court, in reversing, declares that there is not good cause for the complaint. The whole object of the appeal, and the effect of the reversal, is to vacate the decision of the justice, and put it out of the way, with all its direct and collateral consequences and results. I had always supposed the fact that a judgment which has been reversed is a complete answer to every attempt to rely upon it as an estoppel. Wood v. Jackson, 8 Wend. R. 1; Freeman on Judgment, §333.
Here, however, it is proposed to give to a judgment which has been reversed and vacated the same force and effect as a judgment which stands unreversed and even affirmed on appeal. When a party against whom an erroneous decision is rendered succeeds in reversing it, he is entitled to all the benefits flowing from that reversal, and it is gross injustice to adopt a rule which holds him controlled by it in any other proceeding.
But the rule now established violates another well recognized principle of law.
It often happens that when articles of the peace are exhibited, the accused is convicted by the justice upon the *344 testimony of the prosecutor alone. In criminal cases this J x constantly occurs; and therefore it is the record of a con-in a criminal case is never conclusive of the facts on which it is based in any civil action. One of the reasons is, that the conviction may have been obtained on the evidence of the prosecutor alone; and it is not permitted the successful party to rely upon a decision as conclusive thus obtained, when the mouth of his adversary is closed.
Another reason is-, that all estoppels must be mutual, and the prosecutor is never concluded by an acquittal; for if he is afterwards sued for a malicious prosecution, he may, notwithstanding the acquittal, show the existence of probable cause or the absence of malice. According to the present doctrine, however, he may rely on a reversed judgment as an estoppel, although his adversary would not be permitted to do the same thing if the judgment had been in his favor. In Honaker v. Howe, 19 Gratt. 50, this court held that the record of a conviction in a criminal case, although obtained on the confession of the defendant, was not evidence against him for any purpose in a civil action brought by the party injured.
In an action for a malicious prosecution, the plaintiff may introduce the verdict of acquittal by a jury in his behalf—not for the purpose, however, of showing want of probable cause or malice, but because he is required to show that the proceeding against him has failed—has resulted in his favor. The record is introduced for that purpose, and that only. Stewart v. Sonneborn, 8 Otto, 187. He is still required to establish the existence of malice and want of probable cause by independent testimony. And when, therefore, a person unjustly accused of crime is denied all benefit arising from a record of acquittal; we are now told he is to be concluded by an erroneous judgment, which was reversed because it was erroneous. Such a doctrine may be law, but it does not commend itself to our sense of justice.
*345 It has been said, however, that probable cause means such a state of facts and circumstances as will induce a man of ordinary prudence to believe the charge to be and when the justice and officer clothed with judicial authority is satisfied from the evidence there is probable cause, the prosecutor is justified in so believing, and may safely act upon that belief. There are several very conclusive answers to this view. In the first place, an ignorant and illiterate justice in the county may act, and often does act in matters of great concern upon illegal and incompetent testimony, which any reflecting mind would reject as unworthy of a moment’s consideration.
What else could be expected in a land where men are being elected to that office without respect to race, color, education or qualification.
In the second place, the party bringing the accusation in many cases is the only witness, and upon his testimony alone the conviction is obtained. The justice may believe the prosecutor’s statement, aud yet the prosecutor may know ic to be false, or he may withhold important and material information which would give a very different aspect to the case.
In Spengler v. Davy, 15 Gratt. 381, this court held that if the party making a criminal accusation did not himself believe the accused guilty, he could not, in a case for a malicious prosecution, rely upon the facts and circumstances which otherwise might have been sufficient to establish the existence of probable cause. But, according to the present view, if the prosecutor can only succeed in impressing the justice of the peace with a conviction of the truth of his story, he is forever secure against all liability, however false and unfounded and malicious his statement may be. The practical result in many cases is to give the force of an estoppel not merely to the judgment of the justice, but to the evidence on which it is founded.
*346 i afimit there would be some show of reason and iustice . J in holding a verdict and judgment of a court of record of probable cause. There the accused is tried a july 0f impartial men, duly selected and under the supervision of a judge learned in the law. He is assisted by his counsel j the witnesses are subjected to the test of a public examination, and the whole proceeding is calculated to eliminate fully the merits of the case. But what confidence is to be reposed in trials before a single justice in the county, if men choose to pervert them to purposes of revenge and oppression. The accused is usually without counsel, often without advice and without witnesses, the whole proceeding conducted in the loosest and most irregular manner, without the least regard to law, or the rules of evidence.
It is a matter of no great concern, after all, that it is so, because the law treats the judgment as merely preliminary; the party affected may appeal, as of right, and have any injustice done him corrected, by reversing the judgment of the justice. But if that judgment is to be held to be conclusive, then, indeed, the most innocent and deserving may be the victims of the most malignant and unfounded criminal prosecution, without possibility of redress. There are in many counties of Virginia to-day persons filling the office of justice of the peace, both white and black, utterly and notoriously incapacitated, whom no sane man would think of consulting in a busiuess transaction, and yet under the rule now adopted the decision of these men, upon the difficult and perplexing question of probable cause, is to be held hereafter conclusive upon the party most injured by the proceeding, even after it is declared to be erroneous by the proper tribunal.
The case before us is a sufficient illustration, without going further. The defendant in the present action is told by a colored woman, called Sallie Ailstock, that she had been informed by another colored woman, called *347 Hannah Scott, that the plaintiff and another person intended to burn the defendant’s wheat stacked on his farm. And thereupon, the defendant, without further mation, appeared before a justice, and made complaint that the plaintiff and her brother had conspired with and offered a bribe to the woman Hannah Scott to commit a felony in burning defendant’s wheat. The warrant was issued, the parties arraigned before the justice. The only witness examined in support of the charge was the same Sallie Ailstock, who stated that the woman Hannah Scott had told her that she had been offered money by the plaintiff to burn the defendant’s wheat. Hannah Scott was also duly examined, who denied that she had ever made any such statement. It will be seen the only evidence against the accused was that of the colored woman, who merely undertook to retail what another colored woman had told her • and upon this illegal and unworthy testimony, disgraceful to all the parties concerned, a respectable and virtuous lady is convicted, as far as the justice can convict, of an infamous offence involving loss of character and liberty.
The plaintiff seems to have been hopeless of any fair decision by the justice, and she therefore contented herself with appealing to the county court at its next term. And, as might have been expected, the next court dismissed the whole proceeding without the least hesitation. Whether the defendant was actuated by any malice in what he did, is not material to inquire: That was a question for the jury. The point of complaint I make is, that parties unjustly subjected to charges of this sort, involved in trouble and expense, injured in good name and reputation without any just or probable cause, are denied all redress if an ignorant justice can be found to give credence to the accusation.
If the plaintiff had been acquitted by the justice, that acquittal would have been prima fade evidence of want of *348 probable canse, and nothing more. All the authorities , . agree in so holding. Why should an erroneous conviction the same justice, in the same cause, have a more conclusjve effect ? I have never heard of any satisfactory reason given for the distinction.
I do not propose to enter into any minute examination of the cases on this subject. They are conflicting and wholly irreconcilable. The decision in Whiting v. Peckham, 15 Mass. It. 243, is, I admit, contrary to the view! have taken ; but the opinion of the court in that case is a mere statement of results. No reasons are given, and no authorities cited.
In the subsequent case of Parker v. Farly, 10 Cush. R. 279, the doctrine is laid down in a more qualified manner. In that case it appears the plaintiff had been convicted by the verdict of a jury, and had excepted to various rulings of the court in matters of law, but his exceptions were not sustained by the supreme court. At that stage of the cause when he stood liable to be sentenced for the offence, he applied to the court for a new trial, which was granted to admit newly discovered evidence. No new trial was ever had, however, but a nolle prosequi was entered. Chief Justice Shaw, after stating these facts, proceeds to say: “ The court is therefore of opinion that such a verdict of conviction upon instructions correct in matters of law, though afterwards set aside for another cause, must be regarded as proof of probable cause for the prosecution, and stand as a bar to the action for a malicious prosecution.”
All will concede, I think, that a verdict and judgment of conviction in a court of record upon correct instructions, affirmed in an appellate court, though afterwards set aside to let in after-discovered evidence, and never again tried, stands upon much higher ground than the judgment of a single justice in the country reversed for error by a court of competent jurisdiction.
With respect to one or two North Carolina cases, relied *349 upon by the defendant’s counsel, I will only say that they lay down the extraordinary doctrine that the judgment of the justice is conclusive, although procured by perjury subornation of perjury, and although reversed for error by an appellate court. With becoming respect it may be said that the reasoning of Justice Ruffner applies very well to the judgment of a court of competent jurisdiction in full force and effect, but it has no sort of application to a judgment which has been reversed and annulled. On the other hand, the Maine cases hold that the judgment of the justice is not conclusive if it is obtained by unfair means, or by .fraud, or by falsehood, or by circumvention of the prosecutor. Payson v. Caswell, 22 Maine, 212; Witham v. Gowen, 14 Maine, 362.
It is impossible to reconcile these cases. To hold, as was done in North Carolina, that the judgment of an inferior magistrate, procured by fraud and circumvention, and which for that very reason is reversed, protects the party who obtained it against all liability, is to violate every rule of justice and every sound principle of law.
Any and every judgment or decree procured by fraud, no matter how high the court, may for that cause be impeached, even collatterally, whenever relied on. On the other hand, to say that a judgment is not conclusive if obtained by unfair means, as often occurs where the prosecution is malicious, is simply to throw open the door to every sort of investigation and inquiry without any settled rule on the subject. The real point of inquiry is not whether the judgment of the justice was procured by perjury, fraud or circumvention, but whether the party instituting the prosecution had probable cause for doing so, and whether he was influenced by malicious motives.
If the judgment was erroneous, no matter how obtained, and has been reversed, it ought not to operate as an estoppel, to exclude the plaintiff from an investigation into the merits of his case. Now let us examine into the cases in the subject.
*350 In the case of Israel v. Brooks, 23 Illi. R. 575, Breese, in discussing this question, said, “How many magisare there in obscure localities who are as little capahle of determining what is probable cause for a criminal action, as they are of explaining any of the phenomena of nature. The decisions of such an official on intricate questions of law or fact, should not weigh against the accused, and they do not practically, for it is admitted the grand jury pay no attention to the finding of the magistrate.” Thorpe v. Balkett, 25 Illi. R. 339, is to the same effect.
In Goodrich v. Warner, 21 Conn. R. 432, a well considered case, the same identical question involved here was discussed and decided. There, in.an action brought for a malicious prosecution, it appears that the plaintiff had been tried for the offence before a justice of the peace, and found guilty ; whereupon, he appealed to the county court, and was thereupon acquitted. It was held that had there been no appeal from the first judgment, it would have been conclusive evidence of probable cause. That as the result was, the conviction was not conclusive evidence of probable cause; but if the trial was fair and full, it was entitled to great consideration. Waite, J., with whom all the judges concurred, said, “As to the conviction of the plaintiff before the magistrate, upon the charge of an assault and battery, we think the subject was properly submitted to the jury. Had the plaintiff taken no appeal from that judgment, it would have been conclusive evidence of probable cause. Mellor v. Baddeley, 6 Car. and Payne, 374, 25 Eng. C.L. 444.
But if upon a full and fair trial, the evidence against the plaintiff was sufficient to satisfy the justice of his guilt, that circumstance will afford strong presumptive evidence of probable cause existing at the time, although upon a subsequent trial, and perhaps upon other and further investigation, a jury might be of opinion, that it was not *351 sufficient to justify a conviction. See Jones v. Kirksey, 10 Alab. R. 839, which is to the same effect. In Moffatt v. Fisher, decided during the last year by the supreme of Iowa, 47 Iowa R. 473, it was held that in an action for a malicious prosecution, the judgment of a justice of the peace was prima faoie evidence, but not conclusive evidence of probable cause. The court said the rule which made such a judgment conclusive was too arbitrary to effect justice between the parties. The weight to be given to such a judgment would depend much upon whether there was a full and fair trial.
In Burt v. Place, 4 Wend. R. 591, Mr. Justice Marcy, delivering the opinion of the court, said, the case of Whitney v. Peckham, 15 Mass. 243, was decided without due consideration. And he further said that in the case of Reynolds v. Kennedy, 1 Wilson, 232, the question seems to have been what was sufficient, rather than what was conclusive evidence of probable cause. And in the case then before him he laid particular stress on the fact that, although the judgment of the justice was against the plaintiff, that judgment had been reversed upon appeal in the common pleas.
If I have read them aright, the few English cases on the subject hold the same doctrine.
In Mellor v. Baddeley, 25 Eng. Com. Law R. 444, it appeared that the plaintiff had been convicted of a trespass under the gaming act of 1 and 2 Will.; that he underwent sentence of imprisonment under that conviction, and did not appeal against it. It was held that the conviction was an answer to the action for a malicious prosecution. Park, J., said, “I have heard the case throughout, because Mr. Grimes (the counsel) has cited a great number of authorities. I am of opinion that the action cannot be maintained without showing the conviction was quashed.” The learned judge, of course, must have meant that if the conviction had been quashed on appeal, the action might *352 ma^n*:a^ne<i- But if the judgment of conviction was conclusive, although reversed, as now contended, the quash-the conviction was of no sort of importance. Whitworth, v. Hall, 22 Eng. C. L. R. 173, is a similar case.
That case was carried to the court of exchequer chamber, and is reported in 2 Compton and Meeson R. 675. The court say, “the simple question before us is, whether a conviction unreversed must of necessity be an answer to the action as showing probable cause. The statute gives to the party convicted an appeal to the quarter sessions upon certain terms and conditions. The plaintiff in this case neither gave notice of appeal, nor entered into recognizance, but suffered the punishment awarded on conviction ; therefore, as he acquiesced in the conviction, that was conclusive of probable cause. It will thus be seen that conclusive effect was given to the conviction- solely upon this ground, that the party acquiesced in and did not appeal from the sentence.
Although our own reports furnish no cages involving this particular point, yet they do contain cases in which the same principles were involved. One of these is Maddox v. Jackson, 4 Munf. 462. That was an action for a malicious prosecution. It appeared that a warrant was issued upon complaint of the defendant, charging the plaintiff with a felony, and upon the investigation the justice had required the plaintiff to appear before the county court; and upon the trial in that court, the plaintiff was acquitted and discharged. This court held that the decision of the magistrate was sufficient evidence of probable cause, although the person accused was acquitted by the court, unless the plaintiff could show by other evidence that, in fact, the prosecution was without probable cause.
According to this decision the judgment of the judges was merely prima facie; liable to be rebutted by other testimony. And yet the magistrate in that case acted in the *353 exercise of judicial functions. His duty was to examine the witnesses and weigh the evidence. He decided there was probable cause to believe the accused guilty. It a judicial determination and ascertainment of the fact by an officer clothed with the requisite authority.
I know it is said such investigations are ex parte; how exparte f The commonwealth is the party on one side, and the accused on the other. In principle, what is the difference between the determination in that case and the one now under consideration? There is this important distinction. In the case before us the judgment of the justice was reversed on an appeal in the same proceeding. When a party is brought before a juslice charged with a felony, and the justice decides there is probable cause to believe the accused guilty, even if the party is afterwards acquitted by the verdict of the jury, that does not necessarily involve a reversal of the justice’s judgment. The jury may acquit because of a doubt, because the evidence is not conclusive, and therefore it is, a verdict of acquittal does not necessarily carry with it a reversal of the justice’s judgment. And yet that judgment unreversed is never considered as more than prima faeie evidence of probable cause, while a reversed judgment of the same justice is treated as conclusive in almost a similar case. The only difference is that ia one case there is a complaint of a felouy committed, and in the other a complaint of. an intention to commit an offence.
We have a case, however, nearer home, decided by the present court—Scott & Boyd v. Shelor, reported in 28 Uratt. 891. The plaintiff was arrested and taken before a United States commissioner upon a charge of passing counterfeit money made by the defendant. Upon hearing the witnesses, the commissioner sent the plaintiff on for trial before the district court of the United States in Abingdon; and upon the final trial the plaintiff was acquitted by a jury.
*354 He thereupon brought his action for a malicious prosecution against the plaintiff, and recovered a verdict and -judgment for damages; which was unanimously affirmed by this court. The functions of the commissioner in committing for trial are precisely like those of a justice of the peace, and he must decide that there is at least probable cause before he can. send on for further trial.
This court held that the decision of the commissioner was prima faoie evidence of probable cause, but nothing more. If, however, upon the facts and circumstances, the commissioner believed there was good cause to impute guilt, it might be said the defendants were justified also in so believing. Judge Burks, in examining the testimony, proceeded to enquire, not whether the defendants knew the testimony to be false, but whether they believed the plaintiff to be guilty when they made the charge; and secondly, was such belief unwarranted by the facts and circumstances within their knowledge, taking them to be men of ordinary caution and prudence; and both of these questions were decided in the negative.
I can see no distinction in principle between the effect of the justice and commissioner’s judgment in these two "Virginia cases and the one under consideration. And here let me say, I cannot perceive that the defendant can be injured because the judgment does not operate as an estoppel. The onus is upon the plaintiff at every step of the cause to show maláce and want of probable cause. The defendant may rely upon the judgment as prima faoie in his favor, and he may rely upon the facts and circumstances stated on the trial before the justice, as sufficient to establish probable cause; and he will be entitled to the benefit of any presumptions arising therefrom.
In conclusion, I agree that as the public interests often require the institution of criminal prosecutions, the court should be careful not to lay down rules which will expose *355 parties to liabilities because of honest mistakes made in 1 -n such cases. On the other hand, it is equally necessary to take care that the exercise of the law shall not be tuted to mere purposes of private revenge.
A person assailed by a false and malicious prosecution, injured in his good name and fortune, should not be cut off from all redress by any mere technical estoppel which does not go to the merits of the case. Every consideration of public justice requires that there should be in such cases a full and fair investigation. If wrong has been done through a provision of the law, redress should be allowed by the law. I am therefore of opinion to affirm the judgment of the circuit court.
Burícs, J.
When this case was before this court on the first writ of error prosecuted by the defendant, the judges— only four sitting—were divided in opinion upon the question as to the weight which should be given to the judgment of the justice of the peace, which, on appeal, had been reversed by the county court. See 29 Gratt. 192,
209. The same question is before us again. Further investigation and deliberation have strengthened my convictions as to the correctness of the views presented in the opinion which I delivered when the case was here before,
I adhere to that opinion, and for the reasons assigned therein, and also in the opinion of Judge Staples just delivered—in which I fully concur—I think there is no error in the rulings of the circuit court, and that the judgment should be affirmed.